# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI SOUTHERN DIVISION

| | |
|---|---|
| Jan M. Blase, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> The City of Neosho, Steve Hart, ) <br> Richard Davidson, Tom Workman, ) <br> David Ruth, Charles Collinsworth, ) <br> and Steven Hays, ) <br> ) <br> Defendants. ) | Civil Action Number <br> 10-03311-CV-S-JTM |

## Order

On February 22, 2010, Jan Blase ("Blase") was terminated as the City Manager of Neosho, Missouri ("Neosho"). A few months thereafter, on July 19, 2010, Blase filed an action in state court against Neosho, the individual members of the City Council for Neosho, and the Neosho City Attorney. The Petition asserted four counts:

(1) Blase's termination violated the Due Process Clause as incorporated into the Fourteenth Amendment of the United States Constitution;

(2) Blase was wrongfully terminated in violation of public policy under Missouri law;

(3) the actions of the City Council and the City Attorney wrongfully interfered with Blase's contractual relationship with Neosho; and

(4) the Court should conduct a *de novo* review of the termination pursuant to MO. REV. STAT. § 536.150.

The case was subsequently removed from the state court to this Court and currently pending before the Court is a motion for summary judgment [Doc. 22] filed by the defendants.[1] For the reasons set out herein, the motion is granted.

With regard to Blase's first allegation, to wit, that his termination violated the due process protections embedded in the Fourteenth Amendment, although not specifically cited by Blase, such a claim is cognizable – if at all – pursuant to 42 U.S.C. § 1983. First enacted by Congress following the conclusion of the Civil War, section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured. . . .

42 U.S.C. § 1983. By its plain terms then section 1983 provides a remedy "against all forms of official violation of federally protected rights," including the rights guaranteed by the United States Constitution. *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 700-01, 98 S.Ct. 2018, 2041 (1978).

It is well settled that the Constitution, as construed over the years, encompasses two different types of due process claims – substantive due process and procedural due process. *County of Sacramento v. Lewis*, 523 U.S. 833, 841, 118 S.Ct. 1708, 1713 (1998). Affording Blase's Petition a favorable reading, he is complaining about both procedural and substantive due process violations in his termination by Neosho. While the nature of the two due process claims is distinct, both types of claims involve one common and essential element:

---

[1] After the summary judgment motion was filed, Blase filed a motion seeking leave to file a First Amended Complaint that would add a fifth cause of action for breach of contract. That proposed amendment will be addressed at the conclusion of this order.

> Section 1983 relief is predicated on the denial of a right or interest protected by the Constitution. . . . <u>Analysis of either a procedural or substantive due process claim must begin with an examination of the interest allegedly violated</u>. Protected property interests are created by state law, but federal constitutional law determines whether the interest created by state law rises to the level of a protected property interest.

*Dover Elevator Co. v. Arkansas State University*, 64 F.3d 442, 445-46 (8th Cir. 1995) (*citations omitted*) (*emphasis added*). Accordingly to prevail on either a substantive due process claim or a procedural due process claim, Blase must be able to establish that he had a protected property interest in his job as City Manager with Neosho.

Blase was an at-will employee of Neosho. As the City Manager, he was appointed by the City Council and "serve[d] at the pleasure of the Council." Neosho City Code § 105.140. Blase did enter into an Employment Agreement with Neosho that was intended to memorialize certain benefits and establish working conditions for Blase's employment with Neosho. However, that Employment Agreement also specifically provided:

> Nothing in this agreement shall prevent, limit, or otherwise interfere with the right of the Council to terminate the services of [Blase] at any time, subject only to the provisions set forth in Section 3, Paragraphs A and B, of this Agreement and the City Charter.

Employment Agreement § 2(A). The City Charter provides that "[t]he City Manager shall hold office at the pleasure of the Council." Neosho City Charter § 3.02. Section 3 of the Employment Agreement merely provides severance pay terms in the event Blase was terminated by Neosho.

As an at-will employee in Missouri, Blase could have been discharged by Neosho "for cause or without cause." *Dake v. Tuell*, 687 S.W.2d 191, 193 (Mo. 1985) (*en banc*). Indeed,

3

Blase could even have been discharged "for no reason or for an arbitrary or irrational reason." *Shawcross v. Pyro Products, Inc.*, 916 S.W.2d 342, 343 (Mo. App. [E.D.] 1995) (*quotations omitted*). Given this status under Missouri law, a substantial question arises as to whether Blase had a property interest under Missouri law in his employment with Neosho and, to the extent that he did, whether federal constitutional law would conclude that the property interest rises to the level of a protected property interest. Indeed, in broad terms, it is well settled that "that an at-will employee has no property interest to support a claim for violation of due process when discharged." *Daniels v. Board of Curators of Lincoln University*, 51 S.W.3d 1, 7 (Mo. App. [W.D.] 2001).

Blase argues, however, that his due process claim falls within an exception to the general rule based on his Employment Agreement with Neosho. Specifically, Blase argues that his due process rights were violated when: (1) he was not paid severance pay following his termination, and (2) the procedures employed by Neosho in conducting his termination hearing were inadequate. The Court rejects both arguments.

With regard to Blase's assertion that Neosho has violated his due process rights by breaching the Employment Agreement (by the non-payment of severance), Blase does not state a constitutionally protected property interest, but rather a garden variety breach of contract claim. As the Eighth Circuit has noted, "[i]t is well established that "a simple breach of contract does not rise to the level of a constitutional deprivation." *Dover Elevator Co. v. Arkansas State University*, 64 F.3d 442, 446 (8th Cir. 1995) ("the assertion that any time one has an enforceable contract to which the State is a party, there is constitutionally protected property interest under that contract . . . is inconsistent with the concept of the Fourteenth Amendment [*citation*

4

*omitted*]."). Indeed, as summarized by another court:

> [These] courts have observed that if every breach of contract by someone acting under color of state law constituted a deprivation of property for procedural due process purposes, the federal courts would be called upon to pass judgment on the procedural fairness of the processing of a myriad of contractual claims against public entities. We agree that such wholesale federalization of state public contract law seems far afield from the great purposes of the due process clause.

*Unger v. Nat'l Residents Matching Program*, 928 F.2d 1392, 1398 (3d Cir. 1991) (*citation omitted*).

Furthermore, as to the conduct of the termination hearing, Blase complains that he was not afforded the names of witnesses to be called and the documents to introduced at his termination hearing prior to the hearing. However, Blase has produced no evidence establishing that he was entitled to such pre-hearing discovery, including no evidence that such discovery was an implied contractual term "arising out of customs, practices and *de facto* policies." *Winegar v. Des Moines Independent Community School District*, 20 F.3d 895, 899 (8th Cir. 1994). As such, the Court finds that Blase had no constitutionally protected property interest in the precise manner that Neosho conducted his termination hearing.

Inasmuch as the Court concludes that Blase has failed to identify and establish any constitutionally protected property interest. Blase's claim under 42 U.S.C. § 1983 for a violation of his due process rights necessarily fails.

In his second cause of action, Blase asserts that his termination was "wrongful" under Missouri law in that it was in violation of public policy. Although Blase purports to assert this claim against Neosho and the City Council and City Attorney, the latter individuals are not proper party-defendants in a wrongful termination action. A wrongful discharge claim, if

5

cognizable at all, is only appropriate against a plaintiff's employer. The City Council members were essentially Blase's supervisors, not his employer; while the City Attorney was essentially a co-employee. *Compare Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill. 2d 12, 230 Ill. Dec. 596, 694 N.E.2d 565 (1998); *Reno v. Baird*, 18 Cal. 4th 640, 76 Cal. Rptr. 2d 499, 957 P.2d 1333 (1998) (supervisors are not subject to individual liability for wrongful discharge in violation of public policy). Moreover, even if the individual defendants could be deemed to be Blase's employer, they would be entitled to official immunity protecting them from liability. *Gavan v. Madison Memorial Hospital*, 700 S.W.2d 124, 128 (Mo. App. 1985) (recognizing that a public officer's decisions regarding "discharging or firing" employees are discretionary functions subject to official immunity). If not official immunity, then the Court concludes that the individual defendants are entitled to qualified immunity.

It is well understood that "the doctrine of qualified immunity protects government officials . . . from individual liability . . . unless their conduct violated 'clearly established . . . constitutional rights of which a reasonable person would have known.'" *Baribeau v. City of Minneapolis*, 596 F.3d 465, 473 (8th Cir. 2010) (*quoting*, *in part*, *Pearson v. Callahan*, 555 U.S. 223 , 230, 129 S.Ct. 808, 815 (2009)). When a defendant properly raises a qualified immunity defense, a plaintiff must show that: (1) the facts demonstrate the deprivation of a constitutional right; and (2) the right was clearly established at the time of the deprivation. *Howard v. Kansas City Police Department*, 570 F.3d 984, 988 (8th Cir. 2009). With regard to these two requirements, the Supreme Court has articulated that:

> If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions,

the next, sequential step[2] is to ask whether the right was clearly
established.

*Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (2001). Simply put, Blase has not asserted any facts to establish a violation of a constitutional right with respect to his termination. As such, qualified immunity bars his claims against the City Council members and the City Attorney.

With regard to a wrongful termination claim in violation of public policy[3] against Neosho itself, the claim is barred by sovereign immunity as delineated under Missouri law, MO. REV. STAT. § 537.600. That statute codifies that state instrumentalities are immune from suit except for:

---

[2] Earlier this year, the Supreme Court explained that the *Saucier* test is not rigid in its sequencing:

> [W]hile the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory. [Federal courts] should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.

*Perason*, 555 U.S. at 236, 129 S.Ct. at 818. In the present motion, however, the second prong of *Saucier* (whether the alleged constitutional violations were clearly established) is not being argued.

[3] It is well settled that "the government cannot condition public employment on a basis that infringes upon its employees' constitutionally-protected interests in freedom of expression." *Dooley v. St. Louis County*, 187 S.W.3d 882, 885 (Mo. App. [E.D.] 2006) To that end, an aggrieved public employee may assert a claim of wrongful discharge by establishing that his speech was protected by the First Amendment and that the speech was a substantial or motivating factor in his demotion or termination. *Campbell v. Arkansas Dept. of Correction*, 155 F.3d 950, 958 (8th Cir. 1998). Presumably, this is the basis of Blase's wrongful termination claim, although the Petition is devoid of any facts establishing any protected speech.

7

> (1) Injuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles or motorized vehicles within the course of their employment.
>
> (2) Injuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in dangerous condition at the time of the injury.
>
> (3) Cases where a political subdivision has purchased liability insurance.

MO. REV. STAT. § 537.600 (1)-(3). Missouri courts have clearly stated that state sovereign immunity shields a state instrumentality from claims for wrongful discharge. *See*, *e.g.*, *State ex rel. Public Housing Agency v. Krohn*, 98 S.W.3d 911, 914 (Mo. Ct. App. 2003); *Krasney v. Curators of University of Missouri*, 765 S.W.2d 646, 650 (Mo. Ct. App. 1985). In the absence of any of these exceptions, sovereign immunity protects Neosho from Blase's claim for wrongful termination.[4]

In his third cause of action, Blase contends that the members of the City Council and the City Attorney negligently interfered with his employment relationship with Neosho. Under Missouri law, a showing of tortious interference with a contract requires:

> (1) a contract or valid business expectancy,
>
> (2) the defendant's knowledge of the contract or relationship,
>
> (3) a breach induced or caused by defendant's intentional interference,

---

[4] Blase argues that sovereign immunity may be inapplicable because it appears that Neosho might have purchased liability insurance. While Neosho has purchased some liability insurance, it has established that it has no liability coverage to cover the allegations being asserted by Blase herein.

8

> (4) an absence of justification, and
>
> (5) damages to the plaintiff.

*Rhodes Engineering v. Public Water Supply District No. 1 of Holt County*, 128 S.W.3d 550, 555 (Mo. App. [W.D.] 2004). In this case, Blase's claim fails because he cannot establish an absence of justification. Under Missouri law:

> A plaintiff has the burden of producing substantial evidence to establish absence of justification. An absence of justification is the absence of any legal right on the part of the defendant to take the action about which a plaintiff complains.

*Chandler v. Allen*, 108 S.W.3d 756, 760 (Mo. App. [W.D.] 2003).

On January 25, 2010, the City Council adopted a preliminary resolution to initiate the process of terminating Blase as City Manager. As set forth in that resolution, the City Council enumerated three reasons for instigating Blase's removal:

> (1) Blase committed malfeasance by paying general city obligations and payroll with funds that were contractually obligated to be used for the construction of an aircraft hangar;
>
> (2) Blase failed to adequately communicate with the City Council in violation of the City Charter, and
>
> (3) Blase failed to notify the City Council that available revenues would be insufficient to meet the amount budgeted by Neosho.[5]

Under Missouri law, when a defendant in a tortious interference case "has a legitimate interest, economic or otherwise, in the contract . . . sought to be protected, then the plaintiff must show that the defendant employed improper means in seeking to further only his own interests." *Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 317 (Mo. 1993) (*en banc*). Specifically:

---

[5] On December 13, 2010, Blase was found guilty of a Class A misdemeanor violating MO. REV. STAT. § 576.040 [official misconduct by a public servant].

9

> In the context of this tort, improper means are those that are independently wrongful, such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or the common law.

*Id.* At no point in the pleadings filed with this Court has Blase submitted any evidence (or argument) to suggest that charges asserted against him by the City Council were the product or the result of "improper means." Consequently, Blase has failed to show that the actions of the defendants were undertaken without justification.

Blase's final alleged cause of action in his original petition is an assertion that he is entitled to judicial review pursuant to MO. REV. STAT. §536.150. That statute, part of Missouri's Administrative Procedure Act, provides:

> When any administrative officer or body existing under the constitution or by statute or by municipal charter or ordinance shall have rendered a decision which is not subject to administrative review, determining the legal rights, duties or privileges of any person, . . . and there is no other provision for judicial inquiry into or review of such decision, such decision may be reviewed by suit for injunction, certiorari, mandamus, prohibition or other appropriate action . . . .

MO. REV. STAT. §536.150(1). An important exception, however, exists with regard to the application of this provision:

> Section 536.150 . . . has been held not to be applicable to provide judicial review to a common law employee at will who is not otherwise protected by statute, ordinance, regulation or employment contract.

*Barnes v. City of Lawson*, 820 S.W.2d 598, 601 (Mo. App. [W.D.] 1991) (*citing Karzin v. Collett*, 562 S.W.2d 397, 400 (Mo. App. [E.D.] 1978). *See also Mosley v. Members of Civil Service Bd. for City of Berkeley*, 23 S.W.3d 855, 859 (Mo. App. [E.D.] 2000) ("Because at-will employees may lawfully be fired for any reason or for no reason at all, § 536.150 does not

10

authorize judicial review of the termination of at-will employment."). Inasmuch as Blase was an at-will employee, he is not entitled to seek judicial review pursuant to the provisions of MO. REV. STAT. §536.150(1).

One final matter must be addressed. On September 9, 2011, Blase filed a motion with the Court seeking leave to file an amended complaint [Doc. 31]. The request was filed after the deadline for amending pleadings set out in the scheduling order, after the close of discovery, and after the defendants had filed their motion for summary judgment. The proposed amended complaint raises the same four causes of action addressed herein and adds a fifth cause of action for an alleged breach of the Employment Agreement. Specifically, Blase asserts that Neosho breached the Employment Agreement by not providing Blase with severance pay and health benefits. Blase contends that such benefits were due to him following his termination based on the terms of the Employment Agreement. Although, Neosho has not responded to the alleged cause of action, it seems likely that it will argue that Blase's termination was "for cause" and, thus, benefits are not owed to Blase.

The Federal Rules of Civil Procedure provide that amendments to the pleadings are to be liberally permitted:

> A party. . . may amend his pleading only by leave of Court or by written consent of the adverse party; and <u>leave shall be freely granted when justice so requires</u>.

FED. R. CIV. P. 15(a) (*emphasis added*). The courts that have analyzed the "justice" language in Rule 15 have concluded that:

> Under this policy, only limited circumstances justify a district court's refusal to amend the pleadings: undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party.

*Sanders v. Clemco Industries*, 823 F.2d 214, 216 (8th Cir. 1987) (reversing a district court for denying leave to amend). The decision to permit a party to amend its pleadings is left to the discretion of the district court. *Humphreys v. Roche Biomedical Laboratories, Inc.*, 990 F.2d 1078, 1081 (8th Cir. 1993).

In opposing the leave to amend, the defendants argue undue delay and posit one argument with regard to prejudice, to wit: permitting the "amendment to the pleadings at this stage of the process would require reopening the discovery period thereby allowing defendants additional opportunity to depose plaintiff." The defendants do not argue that Blase has sought leave to amend in bad faith nor do the defendants argue that the amendment would be futile. Balancing the interests of the parties, the Court – with great hesitance – concludes that justice is better served by permitting Blase to file his proposed FIRST AMENDED COMPLAINT.

In reaching this conclusion, the Court has given considerable emphasis to the fact that the original petition made it clear that Blase was contending that he was owed severance pay and health benefits under the terms of the Employment Agreement. PETITION ¶ 14. Moreover, it appears likely that if Blase is not permitted leave to amend, his ability to ever pursue a breach of contract claim for the Employment Agreement would be foreclosed due to res judicata and/or collateral estoppel. Why Blase did not include a breach of contract claim in the original petition is an unanswered question. Finally, the Court has also given careful consideration to the defendants' claim of prejudice. While additional discovery <u>may</u> be required, it would appear to be extremely limited in scope.

Moreover, in reaching its decision in this case, the Court was greatly influenced by the Eighth Circuit's opinion in *Carter v. United States*, 123 Fed. Appx. 253 (8th Cir. 2005). In *Carter*, an injured pedestrian sued the United States under the FTCA after she fell on a sidewalk

12

in front of a Post Office. Following the expiration of the deadline for seeking an amendment to the pleadings under the applicable scheduling order and the completion of discovery, the United States moved to dismiss the pedestrian's case because her complaint did not state a legal claim under Missouri law. In response, the pedestrian argued that her complaint was sufficient and, in the alternative, sought leave to file an amended complaint adding an entirely new cause of action against the United States. The district court granted the motion to dismiss and denied the motion to amend, noting that the motion was untimely and the defendant would be prejudiced by the amendment (since the case would otherwise be dismissed).

On appeal, the Eighth Circuit affirmed the district court's ruling on the United States' motion to dismiss finding that "the complaint fail[ed] to state a viable cause of action." *Id*. at 258. However, the Eighth Circuit reversed the district court's ruling on the request to file an amended complaint.

> The district court, relying on [*Hammer v. City of Osage Beach*, 318 F.3d 832 (8th Cir. 2003)], first denied [the pedestrian's] motion on the grounds of undue prejudice. *Hammer*, however, involved the denial of a request to file a second amended complaint. We have held "parties should usually be given at least one chance to amend their complaint." Because we prefer to have claims decided on the merits rather than on the pleadings, we conclude the district court erred in denying [the pedestrian] at least one opportunity to amend her complaint. We also note, the factual underpinnings for the claims asserted in the amended complaint are identical to those in the original complaint. Thus, we divine no undue prejudice to the [United States] in allowing [the pedestrian] to amend her complaint.

*Id*. at 259 (*quoting*, *in part*, *Wisdom v. First Midwest Bank of Poplar Bluff*, 167 F.3d 402, 409 (8th Cir.1999)).

As in *Carter*, this case involves a <u>First</u> Amended Complaint. Moreover, again as in *Carter*, "the factual underpinnings for the claims asserted in the amended complaint are identical

13

to those in the original complaint." In recognition of the Eighth Circuit's stated preference that claims be decided on the merits rather than pleadings, under the unique facts before the Court, the plaintiff is hereby afforded three (3) days from the date of this Order to file his First Amended Complaint with the Court. The rulings herein on the counts set forth in the original petition will apply equally to the same counts asserted in the First Amended Complaint. The Court will hold a telephone conference with counsel for the parties on Friday, October 21, 2011, at 10:00 a.m. to discuss whether the City of Neosho[6] wishes to proceed to trial as scheduled or to continue the trial to permit a brief period of discovery and, possibly, another dispositive motion. Accordingly, it is

**ORDERED** that defendant's MOTION FOR SUMMARY JUDGMENT, filed July 18, 2011 [Doc 22] is **GRANTED**. It is further

**ORDERED** that plaintiff's MOTION FOR LEAVE TO AMEND PLAINTIFF'S COMPLAINT, filed September 6, 2011 [Doc. 31] is **GRANTED**. Plaintiff shall have 3 days from the date of this Order to electronically file his FIRST AMENDED COMPLAINT. It is further

**ORDERED** that counsel for the parties shall participate in a telephone conference with the Court at 10:00 a.m., Friday, October 21, 2011 to discuss the current posture of this case and

---

Although the fifth cause of action in the proposed First Amendment Complaint is directed toward all defendants, The City of Neosho – as the only other party to the Employment Agreement – is the only proper party-defendant in a claim for breach of the Employment Agreement.

the feasibility of the current trial date.  On that date, counsel are directed to call 877.336.1274 and provide the access code 3496777 in order to participate in the telephone conference call.

                       */s/ John T. Maughmer*  
                       **JOHN T. MAUGHMER**  
                       **U. S. MAGISTRATE JUDGE**